# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| STEVEN MARK BALLIS, | ) | Case No.  03-00247-TLM |
| | ) | |
| Debtor. | ) | MEMORANDUM OF DECISION |
| | ) | |
| _____ | ) | |
| | ) | |
| LOIS K. MURPHY, Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adversary No. 04-6238-TLM |
| | ) | |
| THE NORTHERN TRUST | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**INTRODUCTION**

Steven Mark Ballis ("Debtor") filed a chapter 7 petition on January 27,

2003.  Lois K. Murphy ("Plaintiff") was appointed Debtor's bankruptcy trustee.

Plaintiff brings this adversary proceeding against The Northern Trust Company

("Defendant") seeking turnover under § 542[1] of certain interests of Debtor in a

_____

[1]  All statutory references are to Title 11, U. S. Code.

MEMORANDUM OF DECISION - 1

trust established by Debtor's grandfather, arguing that such interests are property

of Debtor's estate under § 541(a)(1).

Defendant moved for summary judgment, contending that such interests are

excluded from the bankruptcy estate under § 541(c)(2).  That motion was heard on

April 6, 2005 and taken under advisement.  By this Decision, the Court finds in

favor of Defendant and grants the motion for summary judgment.

**FACTS**

The pleadings and the submissions of the parties under Fed. R. Civ. P. 56

(incorporated by Fed. R. Bankr. P. 7056) establish the following facts.[2]

On June 28, 1978, Herbert Ballis[3] executed his last will and testament.  The

will created several irrevocable trusts.  Trust A was for the benefit of Herbert's

wife, Helen Ballis, and consisted of assets that qualified for federal estate marital

deduction at the time of Herbert's death.  Herbert's remaining property was

divided into two trusts, Trust B and Trust C.[4]

Trust B was for the benefit of Helen and Robert Ballis, one of Herbert and

---

[2]  Essentially all the facts are undisputed; the parties differ only on the legal analysis and conclusions to be derived from those facts.

[3]  The Court will, for clarity and convenience, need to refer to several persons by their first names, and it intends no disrespect in doing so.

[4]  According to Paragraph A-3, Helen has the ability to direct, by a provision of her will, that the trustee pay and distribute the entire principal and any accrued, accumulated or unpaid net income in Trust A at her death, to particular individuals or entities.  However, if she fails to utilize that power of appointment, the assets remaining in Trust A will be divided equally and transferred to Trust B and Trust C.

MEMORANDUM OF DECISION - 2

Helen's sons.  Trust B is not at issue in this litigation.  The other trust, Trust C,

was for the benefit of Helen and the descendants of the Ballis' then-deceased son,

Sherwin Ballis.  Sherwin had two children, one of whom is Debtor.  Defendant is

the trustee of all three trusts.

In material part, Trust C provides:

> C.  The Trustee shall hold, manage and distribute Trust C upon the following terms and conditions:

> C-1.  Until the death of my wife, the Trustee shall pay to anyone or more of my wife and to the lawful descendants of my deceased son, SHERWIN BALLIS, who shall from time to time be living, so much or all of the net income of Trust C as it in its sole judgment shall from time to time deem necessary or advisable and for the best interest of such beneficiary, taking into consideration all other income and resources known to it to be available to him or her and considering the best interests of all of them as a family group with full power to exclude anyone or more of them and without being required to equalize the payments made from time to time hereunder.  Income not distributed, may, from time to time, in the discretion of the Trustee be added to and become part of the principal of Trust C.

Trust C further provides:

> C-3.  Upon the death of the last to die of me and my wife, the Trustee shall divide Trust C as then constituted into separate trusts of equal value, creating one such separate trust for the benefit of each then living child of my deceased son, SHERWIN (hereafter referred to as a grandchild's trust) and creating one such separate trust for the then living lawful descendants, collectively of each child of my son SHERWIN who is then deceased. If a separate trust is created for the descendants of a deceased child of my son SHERWIN, the Trustee shall immediately pay and distribute the same to such descendants, per stirpes.

Prior to the creation of a "grandchild's trust," the ability of any of the

MEMORANDUM OF DECISION - 3

grandchildren, or any trust beneficiary for that matter, to access or anticipate trust

principal or income is limited by a spendthrift provision:

> J-1.    The interest of the beneficiary of any trust hereunder in
> principal or income shall not be subject to attachment for whatever
> cause nor to the claims of creditors of any beneficiary, and, except for
> the exercise of the powers of appointment granted herein, may not be
> transferred, assigned, encumbered or otherwise anticipated.

The parties agree that, due to Debtor's age, this spendthrift provision will not

apply to his "grandchild's trust" once created.[5]

Plaintiff argues that Debtor has a "vested, contingent" interest in the trusts

created by Herbert, and that interest is property of the bankruptcy estate.  Thus,

Plaintiff argues Defendant should be required to deliver its value to her for

administration in Debtor's bankruptcy case.[6]  Defendant argues that the provisions

of § 541(c)(2) operate to remove Debtor's interests from the estate.

**DISCUSSION AND DISPOSITION**

The standards applicable to summary judgment under Rule 56 have been

often articulated by this Court.  *See*, *e.g.*, *Streibick v. Murrell (In re Murrell)*, 04.3

I.B.C.R. 122, 123 (Bankr. D. Idaho 2004); *Leimbach v. Lane (In re Lane)*, 302

---

[5]  Under Paragraph D-2, a grandchild gains the right to withdraw principal from his or her grandchild's trust after reaching age 30, but not more than 1/3 of such principal before reaching age 35, and not more than 2/3 before reaching age 40.  After reaching age 40 all principal remaining may be withdrawn.  It is apparently this provision that the parties view as eliminating the effect of the spendthrift provisions of Paragraph J-1.

[6]  Plaintiff has not moved for summary judgment on her § 542 complaint, apparently conceding that there would be fact issues to be resolved as to valuation.

MEMORANDUM OF DECISION - 4

B.R. 75, 81, 03.1 I.B.C.R. 213, 215 (Bankr. D. Idaho 2003); *Esposito v. Noyes (In*

*re Lake Country Invs., LLC)*, 255 B.R. 588, 597, 00.4 I.B.C.R. 175, 178 (Bankr. D.

Idaho 2000).  The standards are not at issue or debated and, thus, are not

specifically repeated here.

### A.  Are Debtor's interests in the trusts created by Herbert excluded from the estate due to their contingent nature?

The Bankruptcy Code defines property of the estate as including "all legal

or equitable interests of the debtor in property as of the commencement of the

case."  *See* § 541(a)(1).

The presence of a contingency does not exclude a debtor's trust interests

from the reach of § 541(a)(1).  According to the Ninth Circuit:  "[T]he Supreme

Court held that 'the term "property" has been construed most generously and an

interest is not outside [the Bankruptcy Code's] reach because it is novel or

contingent or because enjoyment must be postponed.'"  *Neuton v. Danning (In re*

*Neuton)*, 922 F.3d 1379, 1382 (quoting *Segal v. Rochelle*, 382 U.S. 375, 379

(1966)).  Thus, in *Neuton*, the contingent nature of the debtor's interest in a trust

did not take the interest out of the bankruptcy estate even though the contingency

at issue was satisfied only post-petition.[7]

---

[7] In *Neuton*, the debtors filed for relief and listed an interest in a family trust.  The trust
provisions required payment of trust income to Eleanor Neuton, debtor's mother, during her
lifetime.  The debtor had a right to receive a share of trust income after Eleanor's death if he
survived her.  On December 28, 1987, after debtors' bankruptcy, Eleanor died.  *See* 922 F.2d at

(continued...)

MEMORANDUM OF DECISION - 5

Among the several authorities cited and discussed in *Neuton* was this

Court's decision in *Kloos v. Dias (In re Dias)*, 37 B.R. 584, 84 I.B.C.R. 39 (Bankr.

D. Idaho 1984).  In that case, Ms. Dias' grandparents established a trust.[8]  Under

that trust, certain assets were to be administered for the benefit of the settlors

during their lifetime.  Upon the death of the last of the settlors, the trust would

terminate and one-half of the corpus would be distributed to a daughter (or her

survivors) and the other half to three granddaughters including Ms. Dias, provided

that such granddaughters had reached 25 years in age.  *Id.* at 586.  Until the time

the granddaughters reached the age of 25, the trustee had the discretion to invade

the trust income or principal to provide for the granddaughters' support or

education.

This Court held that on the date of bankruptcy, Ms. Dias "had an equitable

right to payments or distributions for her support and education, which

disbursements were committed to the sole discretion of the trustee." *Id.*  Because

of this restriction, the Court found "this interest had no value under state law [as]

[i]t could not be sold or otherwise invaded by [Ms. Dias] nor involuntarily made

---

[7](...continued)
1381.  In addition to the contingency, there was also a spendthrift provision in *Neuton* limiting
debtor's access to the trust, which is discussed further below.

[8] In *Dias*, the trust was inter vivos in nature.  37 B.R. at 586.  Here, Herbert's trust was
testamentary.  Plaintiff did not effectively support the argument that this difference alone has any
impact on the analysis of either the § 541(a)(1) or § 541(c)(2) issues in this case.

MEMORANDUM OF DECISION - 6

subject to creditors for her debts." *Id.*

The Court further found that the "other equitable interest held by Cheryl

Dias on the date of filing was a one-third interest in the corpus of the

granddaughter's portion of the trust payable upon her reaching 25 years in age.

This interest, equitably vested though contingent or subject to divestment, was

alienable by her and was subject to attachment or levy." *Id.* The Court found that,

because no spendthrift clause applied to this interest, Ms. Dias could have sold or

assigned it for value on the date of the petition, even though the interest was

subject to divestment should she not reach the age of 25. *Id.* at 587.

*Neuton* appreciated that at the core of *Dias* was the recognition that "'a

beneficial interest in a trust is an equitable interest under § 541(a)(1) despite the

fact that at the time of the filing it was contingent." 922 F.2d at 1382 (citing *Dias*,

37 B.R. at 586-87).[9]

In *Dias*, there was one contingency; Ms. Dias had to reach the age of 25,

which absent tragedy would occur approximately 15 months after the petition date.

*Dias*, 37 B.R. at 587. While it was possible at the time of her bankruptcy petition

that this contingency would not be met, the Court concluded the odds of that

---

[9] The Court of Appeals further observed that the appellant's error in *Neuton* was "to
collapse . . . two inquiries – first, whether the contingency removes the trust from the bankruptcy
estate; second, whether the spendthrift provision does." 922 F.2d at 1382 n.3. The spendthrift
issue is discussed later in this Decision.

MEMORANDUM OF DECISION - 7

occurring were not such that the contingent interest in the trust had no value.[10]

Here, there are several contingencies that must be satisfied before Trust C is divided into "separate trusts of equal value" and Debtor has access to the trust funds.

First, Helen must pass away (at which point the grandchild's trust is created). Here, on the date of Debtor's bankruptcy filing, Helen's death was not "so remote or speculative" as to render the contingent interest valueless. *See Dias*, 37 B.R. at 587. After all, Helen was already 99 years old at the time of the petition.

Second, there must be value remaining in Trust C to fund the grandchild's trust. That value must come from the corpus and income of Trust C, which may, in part, come from Trust A.

Here, Trust A provides Helen the right to appoint a beneficiary by her will who would take any remaining principal and accrued income in Trust A. It is only upon her death and her failure to utilize that power of appointment that any assets remaining in Trust A would be equally divided between Trust B and Trust C. Thus, there is no guarantee that any assets of Trust A will pour into Trust C.

---

[10] At the time the decision in *Dias* was issued (March 14, 1984), it was clear that the contingency of Ms. Dias surviving to December 1983 had been met. *See* 37 B.R. at 586. The focus, however, was properly on "what interest, if any, the estate gained in the trust under § 541(a)(1) on [the petition date of] September 1, 1982." *Id.* Thus here, the significant question is whether Helen was alive at the time Debtor filed his bankruptcy petition.

MEMORANDUM OF DECISION - 8

In addition, there is no evidence as to whether Trust C's assets will remain at the time of Helen's death to fund the grandchild's trust.  Under Paragraph C-2, the trustee can distribute income to beneficiaries at its discretion.[11]  Paragraph I further grants the trustee in its "uncontrolled discretion" the ability to pay to or use for the benefit of a beneficiary any part or all of the principal of any trust then held for the primary benefit of that beneficiary, should it feel the aggregate of income payments to such beneficiary under the trusts and all the other readily available resources of such beneficiary are insufficient to provide for that beneficiary's "suitable care, comfort, support, maintenance, education and medical attention (including hospital and institutional care)."[12]  If the trustee utilizes this power for Helen's benefit before her death and fully depletes Trusts A and C (Helen being a primary beneficiary under both), the grandchild's trusts at issue cannot be created. Questions are thus raised as to how "remote and speculative" the creation of a grandchild's trust might be and the possible value of such an interest.[13]

---

[11]  Since the facts here indicate that no disbursements were made to Debtor within 180 days following his January 2003 petition for relief, the provisions of § 541(a)(5) are not implicated.  *Cf. Birdsell v. Coumbe (In re Coumbe)*, 304 B.R. 378, 384-86 (9th Cir. BAP 2003).

[12]  Paragraph I also requires that, if Helen is the beneficiary in need, the trustee must deplete Trust A before using the principal of Trusts B and C, unless Trust A cannot be "advantageously" liquidated.

[13]  There were no Rule 56 submissions directed to the values of the several trusts, the income generated, the magnitude or pace of discretionary distributions and probable depletion, or other circumstances that might impact the likelihood of creation of the grandchild's trusts. Debtor did, in his schedules, estimate his 50% interest in Trust C as worth $34,000.00.

MEMORANDUM OF DECISION - 9

Additionally, the grandchild in question must reach the age of 30 to gain

access to principal in his or her grandchild's trust, a right that is limited to certain

percentages of the trust principal between that age and 40. *See supra* note 5.

Here, Debtor was 41 at the time he filed his bankruptcy petition. Had the

grandchild's trust been created at the time he filed bankruptcy, he would have had

access. Therefore, if this were considered a contingency, it was met.

The Court concludes that, under *Segal*, *Neuton* and *Dias*, the contingencies

in existence at the time Debtor filed his bankruptcy petition did not exclude his

interests in the trusts created by Herbert from property of the estate under

§ 541(a)(1).[14] However, the Court must also consider the effect of the spendthrift

provisions found in the trust documents.

### B. Are Debtor's interests removed or excluded from the reach of § 541 by operation of § 541(c)(2)?

The Code provides:

(c)(1)   Except as provided in paragraph (2) of this subsection, an
interest of the debtor in property becomes property of the estate under
subsections (a)(1), (a)(2), or (a)(5) of this section notwithstanding any
provision in an agreement, transfer instrument, or applicable
nonbankruptcy law –
     (A)   that restricts or conditions transfer of such interest
     by the debtor; or

---

[14] Reading *Neuton*, one finds no clear direction that the nature of the contingencies be
evaluated in order to resolve the threshold question of whether the contingent interests are
property of the estate. The analysis of the nature of the contingencies, *i.e.*, whether they are
remote or speculative, flows from fealty to the approach of *Dias* and is arguably not required at
all.

MEMORANDUM OF DECISION - 10

>　　(B) that is conditioned on the insolvency or financial
>　　condition of the debtor, on the commencement of a case
>　　under this title, or on the appointment of or taking
>　　possession by a trustee in a case under this title or a
>　　custodian before such commencement, and that effects or
>　　gives an option to effect a forfeiture, modification, or
>　　termination of the debtor's interest in property.
>
>　(2)  A restriction on the transfer of a beneficial interest of the debtor
>in a trust that is enforceable under applicable nonbankruptcy law is
>enforceable in a case under this title.

Section 541(c)(1), (2).

The provisions of § 541(c)(2) qualify the general rule of § 541(c)(1)(A) and exclude and remove from property of the estate the beneficial interests in a trust otherwise captured by § 541(a) *if* there exists a restriction on transfer of such an interest enforceable under nonbankruptcy law at the time Debtor files for bankruptcy.  The operation of this provision is well accepted.  *See Patterson v. Shumate*, 504 U.S. 753, 757-59 (1992) (considering restrictions on transfer found in ERISA); *John Hancock Mut. Life Ins. Co. v. Watson (In re Kincaid)*, 917 F.2d 1162, 1165-66 (9th Cir. 1990); *In re Petruzzelli*, 04.3 I.B.C.R. 108, 109 (Bankr. D. Idaho 2004); *In re Garrett*, 91 I.B.C.R. 224, 225 (Bankr. D. Idaho 1991); *In re Hart*, 91 I.B.C.R. 159, 160 (Bankr. D. Idaho 1991).[15]

---

[15]  *Garrett* and *Hart* considered ERISA qualified pension plans with anti-alienation clauses.  Each decision notes that Idaho has no case law on the subject of spendthrift trusts, either endorsing or rejecting them.  91 I.B.C.R. at 225; 91 I.B.C.R. at 160.  *Garrett* held that "[a]bsent authority to the contrary . . . it is appropriate to assume that such trusts are valid in this state."  91 I.B.C.R. at 225.  Plaintiff has not offered any authority or analysis supporting the idea that Idaho state courts would refuse to recognize a spendthrift trust, and the approach in this Court's prior decisions will be followed.

MEMORANDUM OF DECISION - 11

### 1.   Are the spendthrift provisions effective and enforceable?

*Kincaid* and the Idaho decisions instruct that the effectiveness of the

spendthrift clauses or provisions depends on (a) whether the trusts were self-

settled, and (b) the magnitude of "dominion and control" available to the debtor to

access the benefits of the trust notwithstanding such limiting provisions.  917 F.2d

at 1167; *Garrett*, 91 I.B.C.R. at 225-26; *Hart*, 91 I.B.C.R. at 160.

Here, the trust was not self-settled, *i.e.*, created by Debtor, but was instead

created by his grandfather, Herbert.  Further, Debtor has no ability under the

language of the trust to exercise any dominion or control whatsoever, on income or

principal, until the grandchild's trust is created at Helen's death by the division of

a then-existing corpus of Trust C.  Thus, the Court concludes that the spendthrift

provisions at issue in the instant case are effective and enforceable.

### 2.   Do the spendthrift provisions apply to the interests held by Debtor at the time of the bankruptcy filing?

At the time of bankruptcy filing, Trust C was still being administered for

the benefit of Helen Ballis and Sherwin Ballis' descendants including Debtor.

And, the grandchild's trusts to which Debtor and other grandchildren would have

partial or full access upon reaching certain ages were not yet formed as Helen was

still alive.  Significantly, Debtor's rights and interests were subject to a spendthrift

provision in the trust instrument at the time he filed his bankruptcy petition.  In this

respect, this case is materially different from *Dias*.  As stated in *Neuton*, "to the

MEMORANDUM OF DECISION - 12

extent the trust is protected by a spendthrift clause, it is beyond the reach of the

estate[.]  This is what distinguishes this case [*Neuton*] from *Dias*."  *See* 922 F.2d at

1382 n.3.  The spendthrift provisions were found effective in *Neuton* to protect that

debtor's contingent interest as it existed on the date of filing.[16]  *Neuton* controls

here.

Additional case law supports this interpretation.  For example, in

*Zimmerman v. Spencer (In re Spencer)*, 306 B.R. 328 (Bankr. C.D. Cal. 2004), the

court considered a debtor's rights as a contingent beneficiary under a revocable

inter vivos trust formed by her parents.  306 B.R. at 330.  There was an anti-

alienation restriction protecting the interests of the remainder beneficiaries.  *Id.*

Upon the death of the last remaining settlor (assuming no prior revocation of the

trust), all the remaining corpus would be divided equally to the debtor and her

siblings.  Debtor's mother passed away before bankruptcy, and her father died

within 180 days after the petition date.  *Id.*

The court found the spendthrift provisions excluded the debtor's contingent

interests:

> *Even if this Court acknowledges that the spendthrift provision became unenforceable upon the death of the last trustor, the spendthrift provision was valid and enforceable, under California law, at the time Debtor filed her Petition, as [her father] was alive on that date.  See*

---

[16]  However, only 75% of the interest in the trust was excluded because California law (the "applicable nonbankruptcy law" in § 541(c)(2) terms) limited the degree of protection afforded by such trust provisions.  *See* 922 F.2d at 1383.

MEMORANDUM OF DECISION - 13

*California Probate Code* § 15301(a) and (b). This is because at the time of the Petition, the Trust was fully revocable by the Trustor and "neither [Debtor's] creditors nor transferees had any right to rely upon the Trust for the satisfaction of their claims." *In re Roth*, 289 B.R. [161] at 165 [(Bankr. D. Kan. 2003)]; see also, *Burton v. Ulrich, (In re Schmitt)*, 215 B.R. 417, 422 (9th Cir. BAP 1997) (concluding that under either California or Oregon law, an interest in a revocable trust was not a property right because the inter vivos trust was revocable when the bankruptcy was filed). *Moreover, because the spendthrift clause was still valid on the date of the Petition, the Trust would have been excluded from the bankruptcy estate under section 541(c)(2). See, In re Coumbe*, 304 B.R. 378 (9th Cir. BAP 2003).

306 B.R. at 332 (emphasis added).

In *Magill v. Newman (In re Newman)*, 903 F.2d 1150 (7th Cir. 1990), the debtor was the beneficiary of trusts that lost their spendthrift restrictions on his 50th birthday. His bankruptcy case was filed when he was 45. Thus, while the nature of the unsatisfied-at-bankruptcy contingency was different in *Newman* than in *Neuton and Spencer* (*i.e.*, debtor's age rather than a life beneficiary's death), in all cases the contingency that would terminate the spendthrift protection had not occurred as of the date of the bankruptcy filing. In *Newman,* the court stated:

> The district court was correct in finding that this case calls for application of 11 U.S.C. § 541(c)(2) to take the corpus of each spendthrift trust out of the definition of "property of the estate" of the debtor. A contrary decision would drain the spendthrift trusts of any meaning and ignore the relevant Bankruptcy Code provisions. The grantor of the trusts clearly and effectively directed that the corpus not become part of the debtor's estate until he reached age 50 and that the debtor and his creditors be prevented from anticipating the debtor's interest in the corpus until that time.
>
> The trustee in bankruptcy places great emphasis on the fact that,

MEMORANDUM OF DECISION - 14

according to the terms of the trusts, they shall terminate when the debtor reaches age 50, at which time "the trustee shall distribute to [Newman] the assets of the trust estate, absolutely and free from trust." The trustee asserts that this language will act to nullify the spendthrift provisions at the instant the debtor turns 50, so that he is to receive the trust corpus "free from trust." As a result, the trustee asserts, the estate in bankruptcy should now include the present value of that amount to be turned over "free from trust."

This reading of the trusts is imaginative but far too narrow. It ignores the plain import of the trusts taken as a whole. If the debtor were now older than 50, this approach would make sense. The point of a spendthrift trust, however, is to prevent exactly this sort of anticipation by beneficiaries and their creditors. The Bankruptcy Code is designed to further that goal.

903 F.2d at 1152-53.[17]

The Court concludes that § 541(c)(2) applies in the present case. Plaintiff has not established that the spendthrift provisions would be unenforceable under applicable nonbankruptcy law, here Idaho state law. Under the language of § 541(c)(2) of the Code and the analysis of the foregoing cases, those valid spendthrift provisions exclude trust interests in existence as of filing from property of the estate.

Plaintiff's argument that the spendthrift protections and § 541(c)(2) should

---

[17] Plaintiff points to the language "[i]f the debtor were *now* older than 50, [the bankruptcy trustee's] approach would make sense." *Newman*, 903 F.2d at 1153 (emphasis added). In context, however, the court had to be referring to the question of whether the debtor was 50 at the time of the filing of his case, not his age at the time of the trial or appellate court decisions. *See id.* at 1152 (noting that § 541(a)(1) includes "'all legal or equitable interests of the debtor in property' at the commencement of a case under Title 11"). In *Newman*, had the debtor been 50 or older when he filed his petition, there would have been no spendthrift protection in existence and no § 541(c)(2) issue would have been presented.

MEMORANDUM OF DECISION - 15

not be applied to Debtor's "vested, contingent" interest[18] in the yet to be created

grandchild's trust is not well taken.  Plaintiff's approach views the grandchild's

trust in a vacuum, focusing on the absence of spendthrift protections at some point

in the post-petition future.  Following that approach "would drain the spendthrift

trust[] of any meaning and ignore the relevant Bankruptcy Code provision."

*Newman*, 903 F.2d at 1152.  So, as in *Newman* and this Circuit's decision in

*Neuton*, Debtor's trust interests are found to be subject to the spendthrift

protections.  "While the trust does not escape the reach of the bankruptcy estate by

virtue of its contingent nature, it is not property of the estate insofar as it enjoys

spendthrift status."  *Neuton*, 922 F.2d at 1385.

## CONCLUSION

Defendant's motion for summary judgment will be granted.  Defendant may

prepare an appropriate form of order and judgment.

DATED:  May 5, 2005



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

---

[18] The Court need not decide if "vesting" occurred.  *Neuton* applies the § 541(c)(2)
approach taken by the Court here to "*unvested*, contingent" interests.  *See* 922 F.2d at 1382
(emphasis added).

MEMORANDUM OF DECISION - 16